# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EQUINOX HOTEL MANAGEMENT, INC.** | CASE NO.  17-cv-06393-YGR |
| Plaintiff, | |
| vs. | **ORDER RE: MOTION FOR PRELIMINARY INJUNCTION; GRANTING PARTIAL MOTION TO DISMISS** |
| **EQUINOX HOLDINGS, INC.,** | Re: Dkt. Nos. 14, 40, 51 |
| Defendant. | |

Plaintiff Equinox Hotel Management, Inc. ("Equinox Hotel Management") brings this action against defendant Equinox Holdings, Inc. ("Equinox Holdings") alleging violations under the Lanham Act for both (i) trademark infringement, 15 U.S.C. § 1114, and (ii) false designation of origin, 15 U.S.C. § 1125(a); under California's Business & Professional Code for both (iii) false advertising, Cal. Bus. & Prof. Code §§ 17500, *et seq*., and (iv) unfair competition, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and for (v) submitting an unauthorized trademark application for the "Equinox Holdings Mark."  (Dkt. No. 1, Complaint ¶¶ 58–95.)  Now before the Court is plaintiff's motion for a preliminary injunction to enjoin defendant from using the Equinox Holdings Mark in connection with the operation or promotion of hotels or the performance of hotel-related services. (Dkt. No. 14, Motion for Preliminary Injunction ("PI Motion").)  Also before the Court is defendant's partial motion to dismiss plaintiff's claims for false advertising (Claim Three) and unfair competition based on fraudulent business acts or practices (Claim Four, in part) pursuant to Fed. R. Civ. Pro. 12(b)(6).  (Dkt. No. 40.)

Having carefully reviewed the pleadings, the papers and exhibits submitted on these motions, the parties' arguments at the hearing held on January 16, 2018, and for the reasons set forth more fully below, the Court **DENIES** plaintiff's motion for a preliminary injunction and **GRANTS** defendant's partial motion to dismiss.

## I.   BACKGROUND

Plaintiff is a "San Francisco-based hospitality company specializing in developing, operating, and revitalizing hotel properties."  (Complaint ¶ 6.)  Equinox Hotel Management provides "various hospitality services, including [] hotel management" and consulting for "hotel development projects."  (*Id*. ¶¶ 9, 10.)  Plaintiff alleges that "all hotels operated and managed by Equinox Hotels have or have had fitness centers or gyms on the premises."  (*Id*. ¶ 15.)

Since 1994, plaintiff has developed and used several marks in connection with its business, namely the (i) "Initial Equinox Hotel Management Mark," (ii) "Equinox Hotel Management Logo," and (iii) "Equinox Hotel Management Hospitality Mark" which are depicted below (collectively, the "Equinox Hotel Management Marks").  (*Id*. ¶¶ 9, 10, 14.)

i.   Initial Equinox Hotel Management Mark[1]



ii.   Equinox Hotel Management Logo



iii.   Equinox Hotel Management Hospitality Mark



Plaintiff alleges that it "has invested substantial effort and resources in establishing and promoting the Equinox Hotels brand" and "has consistently and prominently used" the Equinox Hotel Management Marks in connection with its business.  (*Id*. ¶ 16.)  The complaint alleges that

---

[1] As noted below, plaintiff possesses a registered trademark for the Initial Equinox Hotel Management Mark only for "hotel management of others."

2

1    Equinox Hotel Management owns U.S. Registration No. 2,086,203 (Initial Equinox Hotel

2    Management Mark), and Trademark Application Serial Nos. 87/668,575 and 87/668,589 (Equinox

3    Hotel Management Logo) and 87/668,598 (Equinox Hotel Management Hospitality Mark), which

4    seek protection for the mark in the context of "hotels; hotel development services; hotel

5    management services; restaurant services; and hotel consulting and advisory services." (*Id.* ¶¶ 22–

6    25, Ex. A; Dkt. No. 14, Declaration of S. Suleman ("S. Suleman Decl.") ¶¶ 25–27.)

7        According to plaintiff, Equinox Hotel Management "is well-known in the hotel industry

8    and by the public" and has won various hospitality industry awards, participated in industry

9    conferences and trade shows, and its "executives have served on the advisory boards and

10    committees of numerous hospitality industry groups." (*Id.* ¶¶ 17–20.)

11        The complaint states that defendant Equinox Holdings is a "'fitness giant' operating

12    EQUINOX-branded luxury health clubs nationwide, in addition to PURE Yoga, Blink Fitness, and

13    Soul Cycle Facilities." (*Id.* ¶ 27.) Plaintiff avers that defendant "began to formulate plans to

14    expand from the fitness industry into hospitality, including hotels" shortly after Equinox Holdings

15    was acquired by real estate developer "Related Companies" in 2006. (*Id.* ¶¶ 27, 28.) Between

16    March 22, 2007, and August 11, 2009, defendant allegedly attempted to register two "EQUINOX

17    word mark[s] for 'Hotels'" with the United States Patent and Trademark Office (the "PTO")

18    which were rejected due to "a likelihood of confusion" with the Initial Equinox Hotel

19    Management Mark and ultimately abandoned by defendant. (*Id.* ¶¶ 28, 29.)

20        On March 26, 2014, defendant filed U.S. Application Serial No. 86/978,705 to register the

21    "Equinox Holdings Stylized Mark" depicted below for 'Hotels focused on lifestyle, wellness, and

22    fitness." (*Id.* ¶ 30.)

23    Equinox Holdings Stylized Mark

24

25

26    

27

28

United States District Court
Northern District of California

1    Defendant's application for the Equinox Holdings Stylized Mark was not rejected by the PTO.

2    (*Id.* ¶ 31.)  That application remains pending and is currently published for opposition.  (*Id.*)

3        According to plaintiff, Equinox Holdings created a new logo "in or about June 2014" with

4    a diagonally bisected letter "O" and filed U.S. Application Serial No. 87/975,669 on June 21,

5    2017, with regard to this this mark (the "Equinox Holdings Mark").[2]  (*Id.* ¶¶ 32, 43.)  Defendant

6    has used the Equinox Holdings Mark (shown below) as the primary logo at its fitness centers since

7    2000.  (Dkt. No. 27, Declaration of Denise G. Dronsick ("Dronsick Decl.") ¶ 22.)

8        Equinox Holdings Mark

9

10   **E Q U I N O X**

11

12       Plaintiff alleges that defendant "plans to open at least 50 hotels" under the Equinox

13   Holdings Mark and has made "a financial commitment to five such hotels to date."  (*Id.* ¶¶ 35, 36.)

14   According to Equinox Hotel Management, defendant "has begun construction on its first hotel in

15   New York City and plans to open this hotel in 2018 or 2019."  (*Id.* ¶ 37.)  Plaintiff "does not have

16   a New York Property."  (PI Motion at 14:28.)  Plaintiff is concerned that defendant's "hotels will

17   be competitive with hotels operated by Equinox Hotels" because the "hotel management services

18   offered by both" defendant and plaintiff "are likely to be used by the same clients or same type of

19   clients who will learn about them through the same channels of trade."  (*Id.* ¶¶ 48, 49, 51.)

20   Specifically, plaintiff claims that defendant's self-branded branded hotels will "compete directly

21   with Equinox Hotels for the health-conscious consumer" because "[a]ll hotels operated and

22   managed by Equinox Hotels" have or have had fitness centers or gyms on the premises."  (*Id.* ¶

23   51.)

24   //

25

26   _____

27       [2] The complaint also states that defendant filed various other applications with the PTO
     between February 10, 2015, and June 21, 2017, which include the term "EQUINOX," namely U.S.

28   Application Serial Nos. 86/530,909,  87/140,530, 87/499,172, and 87/499,525.  (*Id.* ¶¶ 44–47.)

United States District Court
Northern District of California

1   With regard to the Equinox Holdings Mark, plaintiffs allege that this mark "is identical" to

2   the Equinox Hotel Management Logo because both use the word "Equinox" and "employ a

3   substantially similar bisection design." (*Id*. ¶ 53.) Finally, plaintiff complains that "consumers,

4   partners, and investors in the hotel industry will assume that Equinox Hotels was acquired by

5   Defendant Equinox Holdings, is associated with or affiliated with Defendant Equinox Holdings, or

6   mistake Equinox Holdings for Equinox Hotels entirely." (*Id*. ¶ 55.) According to plaintiff, this

7   will cause Equinox Hotel Managements to suffer "irreparable injury" and plaintiff "has no

8   adequate remedy at law." (*Id*. ¶ 57.) This lawsuit ensued on November 1, 2017.

9   **II.   PRELIMINARY INJUNCTION**

10   **A.   Legal Standard**

11   A preliminary injunction is an extraordinary remedy, which should be granted only in

12   limited circumstances and where the merits of the case plainly favor one party over the other.

13   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Court considers four factors

14   when evaluating motions for a preliminary injunction, namely whether: (1) the moving party has

15   demonstrated that it is likely to succeed on the merits; (2) the moving party will suffer irreparable

16   injury if the relief is denied; (3) the balance of the hardships favor the moving party; and (4) the

17   public interest favors granting relief. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124

18   (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). The plaintiff must make a threshold showing of

19   likelihood of success on the merits and irreparable harm, but a stronger showing on one element

20   may offset a weaker showing on another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

21   1131–33 (9th Cir. 2011). In that regard, courts employ a sliding scale: "serious questions going

22   to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance

23   of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of

24   irreparable injury and that the injunction is in the public interest." *Id*. at 1135 (internal quotations

25   omitted); *see also Herb Reed Enters., LLC v. Florida Entertainment Mgm't, Inc.*, 736 F.3d 1239,

26   1242 (9th Cir. 2013).

27   The burden of showing a likelihood of success on the merits is "placed on the party

28   seeking to demonstrate entitlement to the extraordinary remedy of a preliminary injunction at an

early stage of the litigation, before the defendant has had the opportunity to undertake extensive discovery or develop its defenses." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 714 *opinion amended on reh'g*, 508 F.3d 1146 (9th Cir. 2007).

### B.    First Element: Likelihood of Success on the Merits

Plaintiff bears the burden of proof on the following elements of the asserted trademark infringement claim:  (i) the symbol or term is a valid, protectable trademark; (ii) plaintiff owns the trademark; and (iii) defendant's use of the mark without the consent of the plaintiff is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.  *Adobe Sys., Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) ("trademark holder must show that the defendant's use of its trademark 'is likely to cause confusion, or to cause mistake, or to deceive'") (quoting *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010)); *see also* 9th Cir. Model Jury Instruction 15.6 Infringement—Elements and Burden of Proof—Trademark (updated July 2017).  "The core element of trademark infringement is [p]rotecting against a likelihood of confusion, which helps to ensur[e] that owners of trademarks can benefit from the goodwill associated with their marks and 'that consumers can distinguish among competing producers.'"  *Adobe Systems*, 809 F.3d at 1081 (internal quotations and citations omitted).

This case involves "reverse confusion" in which a larger "junior user" allegedly saturates the market with a trademark similar or identical to that of a smaller "senior user."  *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992).  Further, in such cases, the smaller senior user may be injured if the "public comes to assume that the senior user's products are really the junior user's or that the former has become somehow connected to the latter."  *Id*.  As a result, the senior user may lose "the value of the trademark— its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets."  *Id*.

The parties agree that the Initial Equinox Hotel Management Mark is a valid, protectable mark which plaintiff owns and that defendant's use is without plaintiff's consent.  Defendant focuses its attack on the third element, namely likelihood of confusion.  In determining whether

United States District Court
Northern District of California

confusion is "likely" the following factors are relevant: "1. strength of the mark; 2. proximity of the goods; 3. the similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods or services and degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  The Court addresses each.

### 1.    First Factor: Strength of the Mark

"The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).   The "strength" of a mark "is evaluated in terms of its [1] conceptual strength and [2] commercial strength."  *Id.*  "In a reverse confusion case . . . [courts] must focus on the strength of the *junior* user's mark."[3]  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998) (emphasis in original).

With regard to conceptual strength, marks "can be conceptually classified along a spectrum of increasing inherent distinctiveness."  *Id.* (citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1058 (9th Cir. 1999)).  "From weakest to strongest, marks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful."  *Id.*; *see also Brookfield*, 174 F.3d at 1058.  A mark is "arbitrary" where it "consists of a word or symbol which is in common usage in the language, but which is arbitrarily applied to the goods or services in question in such a way that it is not descriptive or suggestive."  *Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 805 (N.D. Cal. 1987).  The Court finds defendant's junior mark conceptually strong because the word "Equinox" is in "common usage in the language, but [] is arbitrarily applied" to defendant's provision of anticipated luxury hotels and related services "in such a way that it is not simply descriptive" of the same.  *Id.*  Stated simply, the common usage of the word "Equinox," which refers to the calendar dates at which day and night are of equal length, is

---

[3] In a reverse confusion case, as alleged here, the concern is that consumers will believe that the senior mark-holder's goods are produced by the junior mark holder or that consumers will believe that the senior mark-holder is trying to "palm off" its goods as those of the junior mark-holder.  *Dreamwerks*, 142 F.3d at 1130 n.5.

unrelated to or "descriptive or suggestive" of hotels and related services.

Similarly, the commercial strength of the Equinox Holdings Mark appears to be strong with respect to defendant's operation of nearly 100 fitness clubs across the county. Thereupon it touts over $1 billion in annual revenue and appears to attract significant media attention. (PI Motion, Declaration of Jennifer ("Taylor Decl.") ¶ 5, Exs. B, C (describing defendant as "the Rolls Royce of gyms").)

In light of the conceptual and commercial strength of the Equinox Holdings Mark, the Court finds that on this record that the first factor favors plaintiff.

### 2.    Second Factor: Proximity of Goods or Services

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055. Further, services marketed to the same industry are more likely to be related than those marketed to different industries. *See id*. However, even where services are marketed to the same industry, several federal courts have held that such services are not related where the parties target different types of customers. *See, e.g., Tana v. Dantanna's*, 611 F.3d 767, 777–78 (11th Cir. 2010) ("old-world-style Italian restaurant" DANA TANA and "upscale sports restaurant" DANATANNA); *M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 281 F. Supp. 2d 1166, 1172 (C.D. Cal. 2003) (M2 record label management services and M2 music label).

Here, plaintiff and defendant both offer or plan to offer services in the hotel industry. However, the parties differ over the alleged consumer of their respective businesses. *See Brookfield*, 174 F.3d at 1055. Defendant stresses that plaintiff markets its hotel management services primarily to businesses such as third-party branded hotels.[4] (Dkt. No. 26, Opposition to PI Motion, Declaration of Robert J. Keon ("Keon Decl.")[5] ¶¶ 6, 14, 25–26.) Defendant then notes

---

[4] The Court recognizes that plaintiff markets hotel-related services directly to consumers through two hotels located in Texas. However, the record reflects that these hotels are branded with a third-party mark, namely the "Crown Plaza Hotel," not plaintiff's mark.

[5] Plaintiff attacks Mr. Keon's declaration on the ground that his background is in hotel accounting and not hotel management. However, plaintiff overlooks the fact that during Mr. Keon's nearly thirty years in the hotel industry he serviced in various hotel management roles

United States District Court
Northern District of California

that it plans to market a line of self-managed, Equinox-branded hotels directly to consumers. (Dkt. No. 28, Declaration of Simon Warrington ("Warrington Decl.") ¶¶ 9, 11.)  Equinox Holdings proffers testimony that it does not intend to offer hotel management services to third-party branded hotels.  (*Id.* ¶ 11.)  However, the "services" to run defendant's own hotels are the same "services" which plaintiff provides.  On this record, the Court cannot determine whether this is a distinction without a difference.[6]

Plaintiff counters with the expert testimony of Dr. Michael D. Collins who opines that the parties' services are related because both "will be offering services to hotel owners or investors."[7] (Dkt. No. 41, Declaration of Michael D. Collins ("Collins Decl.") ¶ 15.)  Dr. Collins further states that an "overlap" between hotel branding, ownership, and management exists "because hotel-related enterprises, while often focusing on one function of the business, are typically involved in all three functions."  (*Id.* ¶¶ 7, 14.)  In support thereof, Dr. Collins discusses Marriott International which owns "just twenty-two, primarily flagship hotels . . . and franchise over 4,000 hotels."  (*Id.*)

With regard to market expansion, plaintiff fails to introduce sufficient evidence of plaintiff's plans to market Equinox-branded hotels to consumers.  Specifically, plaintiff has offered hotel-related services to third-party branded hotels for over twenty years yet has never developed an Equinox-branded hotel.  (S. Suleman Decl. ¶ 18.)  Accordingly, on this record the Court finds that plaintiff's alleged "interest" in developing an Equinox-branded hotel is

---

including at the Garden City Hotel in New York.  (*Id.* ¶ 2.)

[6] The Court recognizes that several courts have found that business-to-business services and business-to-consumer services are not proximate.  *See, e.g. Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000); 4 McCarthy on Trademarks § 24:51 (5th ed. 2017) ("If one mark user sells exclusively at retail and the other exclusively to commercial buyers, then there may be little likelihood of confusion since no one buyer ever buys both products."); *First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F. Supp. 2d 1048, 1052 (N.D. Cal. 2005) (mortgage services for real estate professionals not similar to those for consumers).

[7] Dr. Collins' opinion is based in part on a recent article by Equinox Holdings' CEO, namely Christopher Nolan.  In that article, Nolan was quoted to say "Equinox is a hotel management company."  (*Id.* ¶ 16.)  Again, the state of the record does not reveal the extent to which defendant intends to offer hotel services to third-party hotel owners, or limit such services to its own hotels.

insufficient to show that it plans to market an Equinox-branded hotel directly to consumers.[8]  *See Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 634 (9th Cir. 2005) (lack of "concrete evidence of expansion plans" tipped factor in defendant's favor); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d 1083, 1096 (C.D. Cal. 2003) (factor favored defendant as plaintiff's "plans" were speculative).  The proffered expert opinion of James Butler, who currently serves as Chairman of the Real Estate Development at the Global Hospitality Group, is not sufficient.  (Dkt. No. 41-1, Declaration of James Butler ("Butler Decl.")).  Mr. Butler opines that "[a]t any moment Equinox Hotel [Management] could find the right capital partner, owner or investor to catapult it to a new league of operations."  (*Id.* ¶ 18.)  However, Mr. Butler fails to explain how such a significant "catapult" could occur "at any moment" given that plaintiff has operated third-party branded hotels for over twenty years yet has never developed an Equinox-branded hotel.

On the balance, the parties' services appear to be moderately related because both offer or plan to offer the same services in the hotel industry, although plaintiff markets primarily to third-party branded hotels, whereas defendant plans to market directly to consumers.   Given the state of the record, too much uncertainty exists for the Court to be persuaded either way.  Accordingly, the second factor is neutral.

### 3.    Third Factor: Similarity of the Marks

The similarity of marks must be analyzed "as they are encountered in the marketplace." *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 444 (9th Cir. 1980) (quoting *Sleekcraft*, 599 F.3d at 351).  In evaluating the similarity of marks which share a common word, courts consider whether the marks contain "other words" in conjunction with a common word, or

---

[8] Dr. Collins' opinions regarding the expansion of Kimpton Hotels & Restaurants Group, Inc. ("Kimpton"), from providing hotel management services for third-party branded hotels to marketing its own Kimpton-brand hotels do not persuade in light of plaintiff's failure to offer evidence as to the amount of time or financial investment required to make such an expansion. (Dkt. No. 41-2, Declaration of Dr. Michael D. Collins ("Collins Decl.") ¶¶ 19, 20.)  Without more, the Court cannot determine whether one company's successful expansion from marketing hotel management services to third-party branded hotels to offering self-branded hotels establishes that plaintiff will do so here.

United States District Court
Northern District of California

are otherwise visually distinguishable. *Id.*; *see also Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 897, n.1 (9th Cir. 2004) (PLAYMAKERS compared to PLAY MAKERS); *First Franklin*, 356 F. Supp. 2d at 1051 (N.D. Cal. 2005) (FRANKLIN FIRST FINANCIAL compared to FIRST FRANKLIN); *Glow Indus., Inc. v. Lopez,* 252 F. Supp. 2d 962, 996-97 (C.D. Cal. 2002) (GLOW and GLOW BY J. LO).

As an initial matter, the Court notes that the parties' marks share an important common word, namely "Equinox." However, the Initial Equinox Hotel Management Mark contains several "others words" in addition to the common word, namely "Hospitality Management Inc." By contrast, the Equinox Holdings Mark contains no words others other than "Equinox." (Dronsick Decl., ¶ 22; Dkt. No. 29, Declaration of Sigrid E. Neilson ("Neilson Decl.") ¶ 6, Ex. 2.) Courts have found that additional words tip against a finding of confusion. *See First Franklin*, 356 F. Supp. 2d at 1051. However, the context matters.

Further, the parties' marks appear at least somewhat visually distinguishable. Plaintiff's mark contains letters in differing sizes, a red band coming off the "Q," and an "O" which is not bisected. By contrast, defendant's mark contains a black-and-white minimalist design with lines of equal thickness, sharp edges, and no color. (Dronsick Decl., ¶ 22.) The "O" is bisected diagonally.

Weighing the predominate common word used in the parties' marks, namely "Equinox," and the context of the hotel industry in particular as it relates to the "extra words," against differences in the marks' style, color, and design, the Court finds that on this record that the third factor favors plaintiff by a narrow margin.[9]

### 4.    *Fourth Factor: Actual Confusion*

Plaintiff argues that defendant's use of the Equinox Holdings Mark has already caused confusion on the part of industry participants. Plaintiff's showing in this regard is light. Plaintiff offers only the declarations of Executive Vice Presidents Adam and Sam Suleman who state that

---

[9] This finding is consistent with that of the PTO which rejected defendant's trademark applications in 2007 and 2009 due to similarities of the parties' marks. (Complaint ¶¶ 28, 29.)

United States District Court
Northern District of California

plaintiff has been mistaken "repeatedly" for defendant by potential clients and organizers at

industry conferences and by two industry journalists and a vendor.[10]  (S. Suleman Decl. ¶¶ 59, 62,

64; Declaration of Adam Sulman ("A. Suleman Decl.") ¶¶ 10–20.)  Specifically, plaintiff

highlights an unnamed trade show attendee who stated that that he found it "interesting to see

what you guys are doing with starting your new hotel fitness brand," emails from *Hotel*

*Management Magazine* and *Hotel Business Design* to plaintiff which seek to discuss defendant's

"growth from a wellness brand to a hotel brand," a prospective partner who believed plaintiff was

associated with Equinox Holdings, an email from one of plaintiff's current vendors which

requested contact information regarding defendant, and an email[11] which purports to show that a

marketing manager responsible for listing attendees at an industry summit was confused as to

whether "Equinox Hotels' and "Equinox Hospitality" were related.  (S. Suleman Decl. ¶¶ 52–54,

59, 64; A. Sulman Decl.  ¶¶ 12, 13, 15–17, 18, 19; Dkt. No. 51, Ex. A.)

Plaintiff does not persuade on this record, as it proffers just eleven incidents from which it

claims actual confusion exists despite the fact that defendant announced its intention to expand

into the branded-hotel market more than 30 months ago. These sporadic episodes are insufficient

to support a finding of actual confusion.  *See Surfvivor*, 406 F.3d at 629, 633 (finding plaintiff's

proffer that "a few people [had] wondered" about a connection between the parties' products,

"[o]ne retailer and one customer [who] mistook" plaintiff's mark for defendant's mark, and "one

---

[10] Plaintiff further contends that these incidents have increased over the course of time.  (S. Suleman Decl. ¶ 65; A. Suleman Decl. ¶¶ 11, 19.)  However, plaintiff fails to offer evidentiary support for this contention as plaintiff proffers roughly the same number of incidents in 2016 as in 2017.  (*See* S. Suleman Decl., Exs. V, X, Y.)

[11] Plaintiff moves for leave to submit this email.  (Dkt. No. 51.)  The email was apparently written on January 17, 2018, which is approximately four weeks after plaintiff's reply brief was due.  Defendant relies on *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012), in arguing that the plaintiff's motion should be denied because evidence of confusion is not relevant unless "the confusion is among relevant consumers and impacts a purchasing decision." (Dkt. No. 54 at 2.)  Defendant does not persuade as it ignores the language in *Rearden* which indicates that the Ninth Circuit has "recognized . . . that non-consumer confusion can serve as a proxy for consumer confusion."  *Rearden*, 683 F.3d at 1215 (citing *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 829 (9th Cir. 2011).  Accordingly, the Court **GRANTS** plaintiff's motion and takes the email into consideration as noted above.

1    trade show attendee" who thought there was a relationship between the marks insufficient to show

2    actual confusion); *see also Glow*, 252 F. Supp. 2d at 999–1000.[12]

3          In light of the scant evidence of actual confusion and contrary evidence that confusion is

4    unlikely, the Court finds that the fourth factor favors defendant on this record.

5                    *5.      Fifth Factor: Marketing Channels Used*

6          "Convergent marketing channels increase the likelihood of confusion."  *Sleekcraft*, 599

7    F.2d at 353. "In assessing marketing channel convergence, courts consider whether the parties'

8    customer bases overlap and how the parties advertise and market their products."  *Pom Wonderful*

9    *LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014).  Here, plaintiff argues that the parties

10   "attend industry trade shows and conferences to promote the company."  (See S. Suleman Decl. ¶

11   52, Ex. U.)  Further, plaintiff contends that it and Equinox Holdings "use the same trade

12   publications to promote their services, including *Hotel Business* and *Hotel Management*

13   *Magazine*." (*Id.* S. Suleman Decl. ¶ 50, Ex. X.)

14         In opposition, defendant proffers evidence that it advertises its Equinox-branded luxury

15   hotels primarily "on social media and through stylish print ads in consumer magazines that target

16   its customer base, and has no plans to advertise in trade journals."  (*See* Keon Decl. ¶¶ 73-77;

17   Warrington Decl. ¶ 20.)  Plaintiff offers no evidence to show that defendant advertises in industry

18   journals.  Further, plaintiff fails to show that plaintiff advertises on social media or in consumer

19   magazines.  Finally, as noted above, defendant proffers evidence that parties market or intend to

20   market to different types of customers.  *Mach. Head v. Dewey Glob. Holdings Inc.*, 2001 WL

21   1747180, at *9 (N.D. Cal. 2011) (defendant marketed to industry professionals and plaintiff to the

22   public).  Accordingly, the fifth *Sleekcraft* factor tips in favor of defendant based on the current

23   record.   However, should defendant expand into those channels used by plaintiff, the balance

24   would shift.

25

26         [12] Further, Equinox Holdings proffers survey results which suggest that only
27   approximately 1% of hotel guests who encounter plaintiff's marks during their stay would confuse
     plaintiff with defendant.  (Dkt. No. 31, Declaration of Alex Simonson ("Simonson Decl.), ¶¶ 15,
28   16; Ex. 1, Appendices D–I.)  Again, the Court understands that the persuasiveness of the evidence
     depends on a better understanding of the market and "customer."

United States District Court
Northern District of California

United States District Court
Northern District of California

6.      *Sixth Factor: Type of Services and Degree of Care Exercised by Purchaser*

The parties agree that "in a reverse confusion case . . . the degree of care exercised is determined with reference to the senior user's customers."  (PI Motion at 19 (citing *Mach*, 2001 WL 1747180, at * 10).)  Plaintiff argues that its customers "fall into two different groups," namely (i) "vendors, investors, and partners who transact with Equinox Hotels in the operation, maintenance, acquisition, and development of hotel properties" and (ii) hotel guests.  (*Id.*)  Plaintiff further claims that the former "already find it impossible to distinguish" between the parties, and that the later "are not experts in the field of hospitality."  (*Id.*)

As noted above, the record is mixed with respect to the type of services and nature of customer to whom the parties market.  The Court thus finds that the sixth is neutral for the same reasons noted with respect to the second factor.  *See* Section II.B.2, *supra*.

7.      *Seventh Factor: Defendant's Intent in Selecting the Mark*

In evaluating the seventh factor, courts "ask 'whether defendant in adopting its mark intended to capitalize on plaintiff's good will."  *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017) (quoting F*ortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010)).  The Ninth Circuit has stated that "in the case of reverse confusion, typically 'neither junior nor senior user wishes to siphon off the other's goodwill.'" *Id.* (quoting *Dreamwerks*, 142 F.3d 1127, 1130 (9th Cir. 1998)).  Generally, the intent factor will be of minimal importance because intent can be hard to prove and "intent to confuse customers is not required for a finding of trademark infringement." *Brookfield*, *supra*, 174 F.3d at 1059 (citing *Dreamwerks*, *supra*, 142 at 1132 ("Absence of malice is no defense to trademark infringement.").

The intent factor favors plaintiff because defendant was aware of plaintiff's marks based on defendant's prior trademark applications which were rejected and defendant's unsuccessful attempt to purchase the Equinox Hotel Management Marks in 2014.  (Taylor Decl. ¶¶ 9–16; S. Suleman Decl. ¶¶ 31-33, Ex. H.)  However, as this is a reverse confusion case intent plays a less critical role.

8.      *Eighth Factor: Likelihood of Expansion of the Product Lines*

As noted above, the Court finds that plaintiff on this record has failed to show a likelihood of expanding into the market for self-branded luxury hotel services which defendant intends to market.  Plaintiff's claim that it is "interested" in developing an Equinox-branded hotel is insufficient in light of plaintiff's failure to proffer "concrete evidence of expansion plans."  *See Surfvivor Media,* 406 F.3d at 634; *Matrix,* 290 F. Supp. 2d at 1096 (factor favored defendant as plaintiff's "plans" were speculative). Thus, on the current record this factor favors defendant.

9.      *Summary*

In conclusion, the Court finds that the likelihood of success cannot be determined on the current record.  Plaintiff can establish the first two elements of its claim, (*see* Section II.B. at 6:25–26), and with respect to the *Sleekcraft* factors, the first, third, and seventh factors favor plaintiff.  However, on this record, the fourth, fifth, and eighth factors favor defendant and the second and sixth factors are neutral.

**C.      Second Element: Likelihood of Irreparable Harm**

To obtain a preliminary injunction, a plaintiff must "demonstrate a likelihood of irreparable injury," more than a mere possibility.  *Winter,* 555 U.S. at 21.  To establish a likelihood of irreparable harm, conclusory or speculative allegations are not sufficient.  *Herb Reed,* 736 F.3d at 1250 (holding that pronouncements "grounded in platitudes rather than evidence" are insufficient); *Caribbean Marine Servs. Co., Inc. v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1988) (holding that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction" and adding that a "plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief" (emphasis in original)).  "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."  *Blackberry Ltd. v. Typo Prods. LLC,* 2014 WL 1318689, at *11 (N.D. Cal. 2014) (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.,* 664 F.3d 922, 930 (Fed. Cir. 2012)).

In reverse confusion cases, the senior user may suffer harm where the junior user "overwhelms" the senior user in the marketplace because "the senior user loses the value of the

15

trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006). Plaintiff raises four arguments as to this element, namely that irreparable harm exists as a result of (i) actual confusion, (ii) loss of control over reputation, (iii) defendant's poor customer service, and (iv) loss of business opportunities.  The Court addresses each.

### 1.    First Argument: Actual Confusion

According to plaintiff, its corporate identify "will be washed away by the rising tide of publicity associated with" defendant's Equinox-branded hotels.  *See Dreamwerks*, 142 F.3d at 1129.  Plaintiff highlights that the "threat of being driven out of business is sufficient to establish irreparable harm."  *Am. Passage media Corp., v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1494 (9th Cir. 1985.)  However, as discussed previously, plaintiff proffers just eleven incidents over the course of 30 months which plaintiff allege represent actual confusion.  *See Section III.A.4, supra*. On the current record, the Court finds plaintiff's proffer insufficient to show that Equinox Hotel Management faces a "threat of being driven out of business" if the PI Motion is denied, especially if the Court orders a prompt trial date.[13]

### 2.    Second Argument: Loss of Control or Reputation

The "potential loss of goodwill or loss of control over one's reputation . . . may constitute irreparable harm for purposes of preliminary injunctive relief."  *TPW Mgmt., LLC v. Yelp Inc.*, 2016 WL 6216879, at *11 (N.D. Cal. 2016); *see also Kreation Juicery, Inc. v. Shekarchi*, 2014 WL 7564679, at *12 (C.D. Cal. 2014).  However, to establish this element plaintiff "must do more than simply submit a declaration insisting that its reputation and goodwill have been harmed." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 2014 WL 4312021, at *10 (N.D. Cal. 2014);

---

[13] Further, the Ninth Circuit has stated that evidence of confusion without additional proof of irreparable harm is insufficient to establish this element.  *Herb Reed*, 736 F.3d at 1250; *see also Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1072–73 (N.D. Cal. 2015) (claimed "instances of actual confusion" insufficient as they were "nothing more than a regurgitation of consumer confusion evidence"); *Williams v. Green Valley RV, Inc.*, 2015 WL 4694075, at *3 (C.D. Cal. 2015) ("Evidence of customer confusion without proof of likely irreparable harm is not enough."); *Spiraledge, Inc. v. SeaWorld Entm't, Inc.*, 2013 WL 3467435 (S.D. Cal. 2013).

United States District Court
Northern District of California

*see also Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, 2016 WL 9275407, at *7 (C.D. Cal. 2016) (declaration that plaintiff will "lose goodwill" because it is a small business and Defendant [is a] large chain, . . . purely speculative [and] insufficient to demonstrate irreparable harm"); *Arcsoft*, 153 F. Supp. 3d at 1074 ("vague and unsubstantiated" and "utterly speculative" claims insufficient); *Spiraledge, Inc.,* 2013 WL 3467435, at *4 (claims that confusion would "render [plaintiff] invisible in the marketplace" too speculative).

Here, plaintiff claims that a "loss of control is likely to be total" as a result of defendant's large marketing budget and size "in its field."[14]  (PI Motion at 28.)  In support thereof, plaintiff relies on the declaration of its Vice President, namely Samuel Suleman.  (S. Suleman Decl. ¶¶ 35, 66.)  Plaintiff does not persuade on this record, as its proffer of just eleven instances of confusion over 30 months is insufficient to show that it will suffer a "total" loss of control over its business reputation if this Court denies its PI Motion.

As in *Wells Fargo*, *Mission Viejo*, *Arcsoft*, and *Spiraledge*, the Court finds plaintiff's declaration insufficient to establish irreparable harm based on loss of control over reputation.[15]

### 3.    Third Argument: Defendant's Customer Service

Plaintiff highlights that Equinox Holdings lacks a "track record as a hotel operator." (PI Motion at 15.)  Plaintiff believes that if defendant performs poorly in the hospitality space then defendant's poor reputation "will become Equinox Hotels' reputation."[16]   (*Id.*)

The record on this issue is mixed.  Plaintiff ignores contrary evidence which suggests that defendant has a strong reputation for customer service, as well as evidence indicating that

---

[14] *Drakes Bay Oyster Co. v. Salazar*, 921 F. Supp. 2d 972 (N.D. Cal. 2013), does not help plaintiff because *Drakes Bay* was not a trademark case.  The analogy is not apt in any manner.

[15] Plaintiff argues that in *Wells Fargo* the court interpreted *Herb Reed* to require courts to relax plaintiff's evidentiary burden to show harm to reputation or goodwill.  *Wells Fargo*, 2014 WL 4312021, at *10.  However, even under a relaxed standard plaintiff offers insufficient "evidence of any harm to its reputation, brand, or goodwill, and instead offers only 'platitudes' of the type rejected in *Herb Reed*." *Id.*

[16] Equinox Hotel Management appears to base this argument on several negative online reviews of one of defendant's finesses clubs which was allegedly being renovated when many of the reviews were written.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plaintiff's reputation for customer service is not strong.  (Dronsick Decl. ¶¶ 14–17.)  Given the

2    lack of any record on defendant's hotel business to date, and the absence of a hotel opening *before*

3    trial, the Court finds harm arising from poor performance on the part of defendant too remote to

4    warrant preliminary injunctive relief.

5                    *4.    Fourth Theory: Loss of Business Opportunities*

6            Finally, plaintiff asserts that potential loss of business opportunities satisfies this element.

7    In support thereof, plaintiff offers the declaration of Adam Suleman who states that a prospective

8    partner did not reach out to plaintiff because the prospective partner believed plaintiff was

9    associated with Equinox Holdings which was "too large an entity for the type of deals he works

10   on."[17]  (A. Suleman Decl. ¶ 15.)

11           Plaintiff's showing as to loss of business opportunities appears weak as plaintiff proffers

12   just one incident of a potential loss of business opportunity across the two-plus years since

13   defendant announced its plans to open a line of Equinox-branded hotels.  Further, even the

14   incident described above does not show that the prospective partner ultimately declined to do

15   business with plaintiff as a result of his mistaken association of plaintiff with Equinox Holdings.

16   The Court thus finds plaintiff's argument regarding loss of business opportunities insufficient.

17                   *5.    Summary*

18           For the reasons discussed above, the Court finds that plaintiff fails to carry its burden of

19   showing irreparable harm.  Plaintiff's proffer of eleven instances of confusion over the course of

20   30 months is insufficient to show that plaintiff will suffer a "total" loss of control over its business

21   reputation if the Court denies its PI Motion.

22   ///

23   ///

24

25           [17] Plaintiff further argues that its ability to negotiate "price breaks and other concessions"
     will be harmed because sellers will believe Equinox Hotel "has greater resources due to a
26   mistaken association with Defendant."  (PI Motion at 30.)  However, plaintiff has offered no
     evidence in support of its claim that vendors will refuse to negotiate price breaks or other
27   concessions as a result of a mistaken association with Equinox Holdings especially once a
     clarification occurs.
28

### D.     Third Element: Balance of the Hardships

Under the Lanham Act, a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. § 1116.  Here, defendant announced its plans offer Equinox-branded hotels on April 21, 2015, (Warrington Decl. ¶ 12), but plaintiff waited until November 1, 2017, to bright this lawsuit.[18] Plaintiff waited an additional three weeks to seek a preliminary injunction.  As a result of plaintiff's delay, defendant has spent 30 months developing and promoting its hotel brand. (Warrington Decl. ¶ 24.)  Courts in this district have found that delay "standing alone, constitutes grounds for rejecting [a] motion for preliminary injunction." *Protech Diamond Tools, Inc. v. Liao*, 2009 WL 1626587, at *6 (N.D. Cal. 2009); *see also See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (reversing preliminary injunction where plaintiff delayed nine months from date when defendant announced its plans to expand its business); *Spiraledge*, 2013 WL 3467435, at *5 (finding thirteenth month delay too long to support preliminary injunction).

On the current record, the balance of hardships tips in defendant's favor.

### E.     Fourth Element: Public Interest

Before issuing an injunction a court also must ensure that the "public interest would not be disserved."  *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Preventing consumer confusion serves the public interest and there exists a strong policy in favor of protecting rights to trademarks.  As set forth in the Court's detailed analysis of the *Sleekcraft* factors, the record on this issue is mixed.  Therefore, the Court finds the public interest factor neutral.

### F.     Preliminary Injunction Conclusion

The Court finds on this record that plaintiffs have not made a threshold showing on irreparable harm and have failed to demonstrate a sufficient likelihood of success warranting extraordinary, and preliminary, relief.  Further, plaintiff's two-year delay in filing its motion tips the balance of hardships in favor of defendant.  Accordingly, the Court **DENIES** plaintiff's motion for a preliminary injunction.

---

[18] Further, the Court notes that plaintiff admits that it was ware of defendant's plans since at least early 2016.  (S. Suleman Decl. ¶ 52.)

### III.   MOTION TO DISMISS

Defendant moves to dismiss plaintiff's claims for false advertising (Claim Three) and unfair competition based on fraudulent business acts of practices (Claim Four, in part) pursuant to Fed. R. Civ. Pro. 12(b)(6).

### A.   Legal Standard

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.   California Business and Professions Code Section 17200

Cal. Bus. & Prof. Code section 17200 (the "UCL") prohibits "any unlawful, unfair, or fraudulent business act or practice." "As the California courts have explained, the UCL is not limited to 'conduct that is unfair to competitors.'" *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 675 (9th Cir. 2007) (citing *People ex rel. Renne v. Servantes,* 86 Cal.App.4th 1081 (Ct. App. 2001)). "Indeed, in defining unfair competition, § 17200 refers to only business acts and practices, not competitive business acts or practices, and the term "embrac[es] *anything* that can properly be called a business practice." *Id.* (citation omitted, emphasis in original). A plaintiff may allege either an unlawful, an unfair, or a fraudulent act to establish liability under the UCL. *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Where a UCL claim "sounds in fraud, [the plaintiff is] required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of [the] injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 793 (9th Cir. 2012) (The California Supreme Court has held that "the amended UCL 'imposes an actual reliance requirement on plaintiffs' who bring a UCL action 'based on a fraud theory involving false advertising and misrepresentations to consumers' because 'reliance is the causal mechanism of fraud.'" *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC,* 2015 WL 3377662, at *6 (N.D. Cal. 2015) (quoting *In re Tobacco II Cases,* 46 Cal.4th 298, 326–28, n. 17 (2009)). "Federal courts sitting in California have disagreed, however, about whether competitor plaintiffs must plead their own reliance." *L.A. Taxi Coop.,* 114 F. Supp. 3d at 866. "Most courts have concluded that Plaintiffs must allege their own reliance on the alleged misrepresentations, rather than the reliance of third parties." *Id*. (citing *O'Connor v. Uber Techs., Inc.,* 58 F.Supp.3d 989, 1002 (N.D. Cal. 2014) ("UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under the UCL"); *U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756, at *15 (E.D. Cal. 2013) (requiring plaintiff to demonstrate reliance on defendants' fraudulent statements in order to establish standing under the UCL's fraudulent prong"); *ZL Techs., Inc. v. Gartner, Inc.,* 2009 WL 3706821, at *11 (N.D. Cal. 2009) (plaintiff alleging only the reliance of potential customers, and not its own reliance, lacked standing to bring UCL claim sounding in fraud).

The Court finds that plaintiff's claim under the fraudulent prong of UCL fails because plaintiff has not alleged actual reliance on the defendant's mark. "The Court joins the majority of courts to have addressed this question and concludes that because [plaintiff does] not plead [its] own reliance on [defendant's] allegedly false advertising, [plaintiff] lack[s] standing to seek relief under the UCL's fraud prong." *Id*. at 866-67. In reaching this conclusion, the Court is persuaded by the logic of *L.A. Taxi Cooperative*. There, the court highlighted that in "describing the 'actual reliance requirement,' the California Supreme Court explained that '[r]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate *cause of the plaintiff's* injury-producing conduct.'" *Id.* at 668 (quoting *In re Tobacco II Cases,* 46 Cal.4th at

326 (emphasis supplied)); *see also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 327 n. 10 (2011) ("a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement"). Further, "in general, outside the context of the UCL, 'a fraud action cannot be maintained based on a third party's reliance.'" *Id.* (quoting *City and Cnty. of San Francisco v. Philip Morris, Inc.,* 957 F.Supp. 1130, 1141 (N.D. Cal. 1997)); *see also Mirkin v. Wasserman,* 5 Cal.4th 1082, 1088 (1993).

Plaintiff argues that it is not required to allege actual reliance because plaintiff is a competitor and there exists a split of authority in this district as to whether competitors must allege actual reliance under the fraudulent prong of the UCL. Plaintiff concedes that the "majority approach" requires plaintiff to allege that it "personally relied on the misstatement" but argues that recent decisions from this district indicate that third-party consumer reliance may be sufficient in cases brought by competitors under the UCL. (Dkt. No. 46, Opposition to Motion to Dismiss at 13.) In support thereof, Equinox Hotel Management relies on three cases brought by competitors under the UCL, namely (i) *Openwave*, 2016 WL 6393503, at *6–7; (ii) *Luxul Tech. Inc. v. Nectarlux, LLC,* 78 F. Supp. 3d 1156 (N.D. Cal. 2015); and (iii) *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 547 (2013), which each held that plaintiffs had adequately pled standing.

Plaintiff does not persuade. First, the issue before the *Openwave* court was not whether a plaintiff-competitor must plead its own reliance on an alleged false or misleading statement under the UCL, but whether a plaintiff-competitor "must plead facts showing *consumers* relied on [the] allegedly false representations." *Openwave,* 2016 WL 6393503, at *6 (emphasis supplied). Second, the court in *Luxul* did not address the UCL's reliance requirement under the fraudulent prong because plaintiff there alleged claims only under the unfair and unlawful prongs. Third, as plaintiff concedes, *Higbee* involved claims under the UCL's unlawful prong, not the fraudulent prong.[19]

_____

[19] Plaintiff argues that this constitutes a "distinction without a difference for purposes of standing" because under California Proposition 64 the standing requirement for claims brought pursuant to the UCL's fraudulent prong "can be no more onerous . . . than for claims of unlawful

1  Accordingly, the Court **GRANTS WITH PREJUDICE** defendant's motion to dismiss

2 plaintiff's UCL claim based on the fraudulent prong.[20]

3  **C.      California Business and Professions Code Section 17500**

4  Under Cal. Bus. & Prof. Code section 17500 (the "FAL"), a plaintiff must show that

5 defendant made or disseminated, or caused to made or disseminated, a statement "which is untrue

6 or misleading, and which is known, or which by the exercise of reasonable care should be known,

7 to be untrue or misleading" with the "intent directly or indirectly to dispose of real or personal

8 property . . . to induce the public to enter into any obligation relating thereto."  "[A] statement is

9 false or misleading if members of the public are likely to be deceived." *McCann v. Lucky Money,*

10 *Inc.,* 129 Cal. App. 4th 1382, 1388 (2005).  "To demonstrate standing under the FAL . . . a party

11 must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact,

12 i.e., economic injury, and (2) show that economic injury was the result of, i.e., *caused by*, the

13 unfair business practice or false advertising that is the gravamen of the claim.'" *Kwikset*, 51

14 Cal.4th at 322 (emphasis in original).

15  Here, defendant argues that plaintiff's claim under the FAL fails on two grounds, namely

16 that plaintiff (i) does not allege any false or misleading statement made by defendant and (ii) lacks

17 standing due to plaintiff's failure to plead actual reliance on a misleading statement.  With regard

18 to the first ground, defendant asserts that plaintiff's allegations that defendant used a mark which

19 was confusingly similar to plaintiff's mark are insufficient to support a claim under the FAL.

20

21

---

22 conduct."  (Opposition to Motion to Dismiss at 16.)  In support of this argument, plaintiff points

23 out that Proposition 64 added the following language to the UCL statute without amending the text
   of Section 17200: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively

24 . . . by any person who has suffered injury in fact and has lost money or property as a result of the
   unfair competition."  However, plaintiff fails to articulate how the language added by Proposition

25 64 eliminates the requirement to allege actual reliance for UCL claims sounding in fraud as
   articulated by the California Supreme Court in *In re Tobacco II Cases*.

26

27  [20] The Court notes that at the hearing held on January 16, 2018, plaintiff's counsel
   represented that plaintiff could not allege actual reliance.  Accordingly, the Court finds that

28 granting leave to amend would be futile.

United States District Court
Northern District of California

Defendant does not persuade in light of *Conifer Sec., LLC v. Conifer Capital LLC*, 2003 WL 1873270 (N.D. Cal. 2003). There, plaintiff "Conifer Securities, LLC" alleged that defendant "Conifer Capital LLC" had used the name "Conifer Capital" in job postings on a third-party website and that such use was misleading under the FAL. *Id.* at *2 (N.D. Cal. 2003). The court found plaintiff's allegations were sufficient to warrant default judgment on plaintiff's FAL claim because the alleged "activity constitutes false advertising with the meaning of Section 17500." *Id.* at *2 (citing *Faberge, Inc. v. Saxony Prods., Inc.,* 605 F.2d 426, 428 (9th Cir.1979) (stating that use of a trademark or trade dress that is likely to cause confusion constitutes a violation of Section 17500).[21]

Turning to defendant's second argument which is that plaintiff lacks standing because plaintiff has not alleged that it actually relied on defendant's allegedly false or misleading statement, no "California courts have explicitly considered whether third party reliance is sufficient to sustain a false advertising claim between competitors." *Youngevity Int'l, Corp. v. Smith*, 224 F. Supp. 3d 1022, 1031 (S.D. Cal. 2016*), modified on reconsideration*, 2016 WL 7626585. Of the several federal courts which have considered this question, "most have found that a plaintiff must allege that they personally relied upon the misstatement." *Id.* (citing *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015) (collecting cases).) Further, the logic of *L.A. Taxi* which indicates the UCL plaintiffs proceeding under the fraudulent prong must allege their own reliance is applicable to claims brought under the FAL. Accordingly, the Court **GRANTS WITH PREJUDICE** defendant's motion to dismiss plaintiff's FAL claim.[22]

---

[21] Defendant's reliance on *Two Jinn, Inc. v. Gov't Payment Serv.*, 233 Cal. App. 4th 1321, 1346 (Cal. Ct. App. 2015), is misplaced because that case involved false advertising under the federal Lanham Act, not California's FAL. Further, *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007), does not help defendant because in that case the court found that a lack of evidence of consumer confusion was fatal to plaintiff's FAL claim at the *summary judgment stage. Id.* at 1081. Defendant fails to cite any authority which indicates that a plaintiff must establish evidence of consumer perception *to survive a motion to dismiss.*

[22] Again, the Court notes that at the hearing held on January 16, 2018, plaintiff's counsel represented that plaintiff could not allege actual reliance. Accordingly, the Court finds that granting leave to amend would be futile.

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that plaintiff has failed to satisfy the requirements for a preliminary injunction, and, thus, **DENIES** plaintiff's motion.  However, in light of the nature of plaintiff's claims and the showing made thus far, the Court is prepared to set a trial in this matter for **July 9, 2018**.

The Court further **GRANTS** defendant's motion to dismiss plaintiff's Third Claim under the FAL and Fourth Claim under the UCL sounding in fraud.

This Order terminates Docket Numbers 14, 40, 51.

**IT IS SO ORDERED.**

Dated:   February  1, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

25